IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-00398-RBJ

MICHELLE E. MATA,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

### ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Michelle Mata's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

### I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Ms. Mata was born on October 4, 1981. *See* R. 155. She has a high school education and two years of college for accounting. R. 18, 179. In the past, she has worked as a bank teller, a bartender, and as a telephone solicitor, although she has not held substantial gainful employment since at least her application date of December 27, 2012. R. 13, 179.

### A. Plaintiff's Physical Conditions.

Plaintiff's relevant medical history related to her alleged physical disabilities begins in May of 2012. At that time, Nurse Practitioner Nancy Welter saw Ms. Mata for a few follow-up treatments for an ovarian cyst (plaintiff had polycystic ovarian disease in 2005, see R. 66) and lower right quadrant pain that radiated to her back, see R. 226–32. During these visits, Nurse Welter noted that plaintiff appeared to have some pelvic pain. *Id.* She subsequently prescribed plaintiff Percocet. *Id.*

Over the next few months plaintiff visited the emergency room multiple times complaining of similar pains in her abdomen, but also of pain in various different parts of her body. *See* R. 256–331. Her physical examinations and tests performed on her during this time, however, came back mostly normal. *See id.* Plaintiff nevertheless was continually prescribed

pain medication during each visit. *Id.* Her abdominal pain was also treated successfully with trigger point injections throughout 2013 and into 2014. R. 15, 316–20, 353–54, 358–61, 365–66, 370–72, 405–06.

Plaintiff also has a history of pain in her shoulders. Her treatment for this condition apparently began with a visit to Parkview Orthopedics in December of 2012. R. 332. During this visit, Physician Assistant Lucas Derting noted that although plaintiff complained of bilateral shoulder pain and displayed some reduced range of motion in her right shoulder, she generally had no weakness in her extremities, full range of motion in her left shoulder, and that imaging was "normal with no fracture or acute process joint space." R. 332. Plaintiff was assessed to have impingement and frozen shoulder syndromes. R. 333. Mr. Derting recommended that plaintiff go to physical therapy. *Id.* However, the record reveals plaintiff did not do so consistently, if much at all. *See, e.g.*, R. 335.

Plaintiff appears to have had four follow-up visits for her shoulder pain at Parkview Orthopedics—one in March of 2013, one in July of 2013, one in November of 2013, and one in March of 2014. R. 335–36 (March 19, 2013 visit), 394–95 (March 6, 2014 visit), 396–97 (November 7, 2013 visit), 398–99 (July 1, 2013 visit). During these follow-ups, plaintiff generally showed some "giveaway weakness" in her shoulders, but no atrophy or neurological deficits, and only some reduced range of motion with tenderness or pain at only the extremes of this range. *See id.* She received shoulder injections during each visit. *Id.* An MRI of plaintiff's shoulders ordered during her November 2013 visit and completed later that same month revealed tendinosis without evidence of a rotator cuff tear, as well as mild bursitis. R. 393.

Based on these conditions, there are two assessments of plaintiff's physical disabilities in the record. First, on April 16, 2013 single decision-maker ("SDM") Janet Weldon assessed plaintiff's condition.[1] Reviewing the record, Ms. Weldon found that Ms. Mata could occasionally lift up to 20 pounds; frequently lift 10 pounds; sit, stand, or walk for a total of six hours in an eight-hour workday; occasionally climb ladders, ropes and scaffolds; and occasionally reach overhead. R. 85.

Second, on May 12, 2014 plaintiff's treating nurse, Nurse Practitioner Dawn Evert, assessed Plaintiff's physical work-related limitations. R. 401–04. Nurse Evert noted that due to plaintiff's complaints of chronic pelvic and abdominal pain, as well as her constant urinary incontinence (a condition absent elsewhere in the record aside from plaintiff's testimony during her hearing, see R. 18, 44), plaintiff could lift and carry only a maximum of 5–10 pounds occasionally or frequently, stand or walk for two hours total in an eight-hour workday and for 30 minutes at any one time without interruption, and that she could never climb, crouch, kneel, or crawl, and only occasionally balance or stoop. R. 402. Nurse Evert also opined that plaintiff could not feel or push, but could reach, handle, see, hear, and speak. R. 403.

### B. Plaintiff's Mental Conditions.

Ms. Mata does not appear to have ever sought consistent treatment for mental health conditions. Nevertheless, there are three evaluations of her mental health or her mental work-related limitations in the record.

---

[1] A single-decision maker or "SDM" is a State employee whom makes an initial finding regarding disability as part of a new model the government is testing to modify the existing disability determination process. *See* 20 C.F.R. § 416.1406(b)(2) ("In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions of eligibility for SSI payments based on disability are met. The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant.").

First, in March of 2013 Donald Degroot, Ph.D. conducted a psychological consultative examination of plaintiff at the request of the State agency after plaintiff filed her application. R. 344–50. During that one-time examination, plaintiff reported that up until 2011 she had been consuming hard liquor on a daily basis (a bottle a day) and that she had recently quit using cocaine. R. 346. She reported herself having depression and that she has attempted suicide twice in her life, but that she had never received inpatient psychiatric treatment. R. 344–50. After various questions and tests, Dr. Degroot noted that many of plaintiff's responses were incorrect or vague and that she generally had difficulty with her concentration and memory. R. 348–49.

Based on his examination of plaintiff and the severity of the complaints she made to him, Dr. Degroot assessed Ms. Mata as having a moderate to marked impairment in her ability to understand, remember, and carry out simple instructions. R. 350. He noted her ability to carry out "simple work-related decisions appears markedly impaired." *Id.* "Her ability to understand, remember and carry out complex instructions [also] appear[ed] markedly to extremely impaired." *Id.* Finally, Dr. Degroot opined that plaintiff's ability to interact with supervisors, co-workers, and the public appeared moderately to markedly impaired, as was her ability to respond to usual work situations and changes in a routine work setting. *Id.*

Plaintiff' second evaluation was done by State agency psychological consultant James Wanstrath, Ph.D. after he reviewed the then-current record (including Dr. Degroot's evaluation). R. 62–65, 84. Dr. Wanstrath did not conduct an examination of plaintiff herself. Nevertheless, in general Dr. Wanstrath agreed with many of Dr. Degroot's opinions about plaintiff's limitations. *See* R. 84. He nevertheless noted his disagreement with two of Dr. Degroot's

5

assessments. First, he took issue with Dr. Degroot's opinion regarding plaintiff's diminished decision-making ability, interpersonal interaction and response, and ability to carry out "simple instructions." R. 84. He explained that the record revealed that plaintiff was not actively seeking mental health treatment and that she did not report any limitations in her ability to carry out the basic activities of daily life. *Id.* Thus, in Dr. Wanstrath's opinion, plaintiff could follow simple instructions, make simple work-related decisions, and sustain ordinary routines. R. 87. Second, he noted that while plaintiff might not be able to work *closely* with supervisors, co-workers, or the general public, the record revealed that she could be supervised and relate to co-workers if this contact was infrequent or not prolonged. R. 86.

Plaintiff's last assessment was completed by Nurse Evert at the same time she completed her assessment of plaintiff's physical work-related limitations. R. 416–18. In her mental work-related limitations assessment, Nurse Evert indicated, without referencing any evidence in particular aside from plaintiff's use of medication and her complaints of pain, that plaintiff had poor to no ability to follow work rules, deal with work stress, function independently, maintain attention or concentration, or use judgment. R. 416. She also opined that Ms. Mata had no ability in various other performance areas, similarly referencing the effects plaintiff's medication had on her physically and emotionally. R. 417. Nurse Evert further supported her assessments by noting plaintiff's subjective complaints of chronic pain and that her medications made her "sleepy." R. 416–18. She also listed four medications in the section asking for the medications plaintiff takes "*for . . .* her mental impairment(s)[,]" although these appear to be medications prescribed to plaintiff for her physical conditions. R. 418 (emphasis added).

### C. Procedural History.

Ms. Mata applied for SSI benefits on December 27, 2012, alleging disability beginning on August 29, 2011. R. 77. Her claim was initially denied on April 16, 2013. R. 76. On April 19, 2013 Ms. Mata requested a hearing, R. 94, which was held in front of Administrative Law Judge ("ALJ") Janice E. Shave on June 3, 2014, R. 24. In a decision dated July 1, 2014, the ALJ found that plaintiff was not disabled. R. 11–19. The Appeals Council subsequently declined plaintiff's request for review. R. 1–5. Plaintiff appealed to this Court. ECF No. 1.

### D. The ALJ's Decision.

The ALJ issued an unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 11–19. First, she found that Ms. Mata had not engaged in substantial gainful employment since her application date of December 27, 2012. R. 13. At step two, the ALJ found that Ms. Mata had the severe impairments of bipolar disorder with anxiety, recurrent bilateral impingement syndrome of the shoulders and mild bursitis, and obesity. *Id.* At step three, the ALJ concluded that Ms. Mata did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then found that Ms. Mata retained the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 416.967(b). *Id.*; 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The ALJ noted that plaintiff could perform such work "with no crawling or climbing ladders, ropes, or scaffolds, only occasional kneeling or crouching, and no overhead pushing, pulling, or reaching." R. 14. She also further limited

7

plaintiff's RFC to include "no interaction with [the] public, no more than casual, non-team interaction with co-workers" and noted that Ms. Mata "is limited to understanding, remembering, and carrying out simple, routine, repetitive work tasks, and no work tasks requiring directing others." *Id.*

At step four, the ALJ concluded that Ms. Mata is unable to perform any past relevant work. R. 17. Finally, the ALJ noted that the transferability of job skills was immaterial because plaintiff was not disabled. Nevertheless, the ALJ determined that given plaintiff's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that the plaintiff could perform. R. 18. Thus, the ALJ concluded that Ms. Mata had not been under a disability since her application was filed. R. 19.

### III. DISCUSSION

Plaintiff gives five main reasons why the ALJ's decision should be reversed: (1) she contends "substantial evidence" does not support the ALJ's RFC determination; (2) she takes issue with the ALJ's assigning "little weight" to Dr. Degroot's medical opinion on plaintiff's mental limitations; (3) she argues the ALJ improperly assigned Dr. Wanstrath's medical opinion "great weight;" (4) she contends that ALJ essentially "cherry-picked" from Dr. Wanstrath's opinion, referencing his assessment of plaintiff's physical condition but omitting the mental work-related limitations he included; and (5) she argues that the ALJ improperly rejected Nurse Everett's opinion on plaintiff's physical limitations.[2] *See* ECF No. 19 at 9–33. Finding that none of these arguments warrant reversal, the Court affirms the ALJ's decision denying Ms. Mata's application for SSI benefits.

---

[2] Plaintiff's opening brief consisted of 34 pages and her reply was an additional 14. The Court reminds plaintiff to re-read its practice standards on page limits.

8

### A. "Substantial Evidence" Supports the ALJ's RFC Determination.

The Court deduces four reasons why plaintiff believes the ALJ's RFC determination is not supported by substantial evidence: (1) the ALJ did not rely on any medical opinion in the record; (2) the ALJ's RFC conflicts with Nurse Evert's medical opinion in the record; (3) the ALJ did not identify any specific evidence she used for her determination that plaintiff could perform "light work;" and (4) the ALJ's RFC is too similar to the SDM's opinion, which suggests her RFC was improperly based on that opinion. *See* ECF No. 19 at 16–18. None of these arguments are convincing.

First, as plaintiff readily acknowledges, the ALJ is *not* required to rely on any medical opinion in the record in particular in forming an RFC. *See* 20 C.F.R. § 404.1527(e)(2) ("Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law. They will *consider* opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts[.]") (Emphasis added); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

Second, it does not matter that the ALJ's RFC "conflicts" with another medical opinion in the record so long as the ALJ properly evaluated that opinion and substantial evidence supports the ALJ's RFC. *See, e.g.*, *id.* Both are true here. *See infra*. Third, plaintiff is simply wrong that the ALJ did not rely on specific evidence for her "light work" determination or that substantial evidence does not support it. The ALJ noted many times the specific evidence that led her to conclude that plaintiff's condition was not as serious as alleged. *See* R. 14–17. This evidence similar reveals the substantial evidence underlying her determination. *See id.*

For instance, the ALJ correctly noted that plaintiff's bilateral shoulder MRI came back with evidence of only minor conditions. R. 16, 393. She also pointed out that plaintiff's strength was normal in numerous follow-up orthopedic examinations, and that as late as July 2013 (or even later, as the record reveals) she demonstrated "no abnormal findings related to her upper extremities[.]" R. 16, 335–36, 394–95, 396–99. Finally, the ALJ clearly explained that she found that Ms. Mata's "recurrent tendinosis with *no structural deficits*, along with her obesity *with no gait disturbance*, *reasonably support a light exertional level* . . . ." R. 16. That was enough, and because substantial evidence supports this reasoning, the ALJ committed no error here. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Lastly, I disagree with plaintiff's contention that it is clear from her decision that the ALJ relied on the SDM's opinion. As plaintiff correctly points out, this would have been improper. *See Ky v. Astrue*, No. 08-cv-00362-REB, 2009 WL 68760, at *3 (D. Colo. Jan. 8, 2009) ("[A]n SDM is not a medical professional of any stripe, and the opinion of an SDM therefore is entitled to no weight."). However, here, the ALJ never mentioned the SDM by name or the SDM's opinion in her decision. *See* R. 10–19.

Plaintiff nevertheless gives three reasons why she thinks the ALJ relied on that opinion: (1) two typos the ALJ made in her decision—accidently supplanting the SDM's surname in place of Dr. Degroot's when discussing the latter's opinion—reveals a (subconscious?) belief that the SDM's opinion was that of a doctor; (2) that these typos reveal that the ALJ intended to rely on the SDM's opinion because the ALJ had rejected Nurse Evert's assessment (the only other medical opinion regarding plaintiff's physical limitations in the record); and (3) that her RFC and

the SDM's RFC are "strikingly similar." ECF No. 19 at 17–18. Again, none of these arguments is persuasive.

Read in context, the ALJ was obviously referring to Dr. Degroot's findings, not the SDM's, when she made these two typos. She simply switched out their names, but clearly meant to write Dr. *Degroot* since she was discussing the content of his medical opinion in that paragraph. *See* R. 17. These typos therefore do not reveal any confusion by the ALJ that the SDM was not a medical professional. Second, plaintiff's argument that the ALJ intended to rely on the SDM's opinion in crafting her own is pure speculation and quite unlikely since she never mentioned the SDM's opinion in her decision. Finally, it is no coincidence that the ALJ's RFC and the SDM's opinion are somewhat similar—they are based on the same record of medical evidence. I'd be more concerned if these two opinions were miles apart given that the record in this case reveals few if any serious clinical findings. *See supra.* Accordingly, I find plaintiff's first argument for reversal unavailing.

### B. The ALJ Validly Assigned Dr. Degroot's Opinion "Little Weight."

Plaintiff's second argument is likewise unconvincing. In her brief, plaintiff takes issue with all six reasons the ALJ gave for assigning Dr. Degroot's medical opinion "little weight." ECF No. 19 at 19–22. However, instead of addressing each of these reasons one-by-one and plaintiff's lengthy arguments about them individually, since even if one (or conceivably more) is not supported by substantial evidence, "[a]s long as substantial evidence [still] supports the ALJ's determination, the [Commissioner's] decision stands[,]" see *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992), I'll explain what the law requires an ALJ

to do when assigning a medical opinion weight and why I ultimately find that the ALJ properly followed the law here.

"An ALJ must consider six factors to determine what weight to give a medical opinion: (1) the examining relationship between the physician and the applicant; (2) the length, nature, and extent of their treatment relationship; (3) the strength of the evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialty; and (6) any other factors, such as the physician's familiarity with disability programs and the extent of his familiarity with other information in the record, that tend to support or contradict the opinion." *See Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  While an ALJ *must* consider these factors, she does not need to explicitly discuss them all.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Rather, so long as her decision is "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the . . . medical opinion and the reasons for what weight[,]" she does not commit reversible error. *Id*. (internal quotation marks and citations omitted) (finding that an ALJ "satisfie[d] this requirement" where the ALJ stated that he gave "very little weight" to an opinion, cited evidence to contradict that assessment, and where the court found that the ALJ's reasoning was supported by medical evidence in the record).

Here, the ALJ clearly noted that she gave "little weight" to Dr. Degroot's assessment of plaintiff's mental health limitations. R. 17.  She explained her decision by noting, first, that Dr. Degroot's opinion was formed based on a "one-time assessment" of plaintiff's condition. Second, she noted that the severity of the symptoms that plaintiff presented to Dr. Degroot, and which Dr. Degroot apparently adopted, was not "well-supported by the record," because plaintiff

had no "significant ongoing mental health treatment" and lother evidence in the record contradicted it. *Id*.

The Court finds that substantial evidence supports this finding. The ALJ is right that the record is devoid of any serious or consistent medical findings pertaining to the severity of plaintiff's mental health complaints. Indeed, plaintiff does not appear to have sought out any significant or ongoing mental health treatment, and the only evidence of the disabling effects of plaintiff's mental health issues in the record reveal that her alleged conditions were quite minor and apparently easily treatable.[3] *See, e.g.*, R. 376–78 (plaintiff's July 2013 emergency room visit for unspecified anxiety that was quickly treated with anti-anxiety medication and that did not apparently result in any follow up visit). Furthermore, although plaintiff told Dr. Degroot that she had attempted suicide twice in the past, the record reveals that she has frequently denied that claim about the intensity of her mental health conditions. *See* R. 281, 378. Thus, I find that

---

[3] Plaintiff repeatedly invokes the phrase "the absence of evidence is not evidence" when refuting the ALJ's determination that nothing in the record corroborated either the severity of the symptoms plaintiff disclosed to Dr. Degroot or Dr. Degroot's findings regarding the disabling nature of plaintiff's condition. *See, e.g.*, ECF No. 23 at 8 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)); R. 17. However, there is ample evidence in the record that reveals that any mental health issues that plaintiff had during her alleged period of disability were not as serious or severe as she conveyed to Dr. Degroot. *See, e.g.*, R. 256 (denying a history of anxiety), R. 376–77 (plaintiff's July 2013 emergency room visit). Thus, no error occurred when the ALJ, while still recognizing the underlying existence of many of plaintiff's complaints, discredited the *severity* of these symptoms due to a lack of corroborating evidence. *See* R. 17 ("Inconsistent statements and descriptions of [plaintiff's] symptoms throughout the medical records . . . renders the claimant's allegations of disabling symptoms and limitations not fully credible."); *cf. Thompson*, 987 F.2d at 1489 ("[T]he absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain[.]") (Internal quotation marks and citations omitted).

substantial evidence supports the ALJ's decision to give "little weight" to Dr. Degroot's quite severe mental work-related limitations assessment.[4]

### C. The ALJ Validly Assigned Dr. Wanstrath's Opinion "Great Weight."

Given the law laid out above, I similarly find that the ALJ's treatment of Dr. Wanstrath's opinion regarding plaintiff's mental work-related limitations was not erroneous. The ALJ clearly explained what weight she gave to Dr. Wanstrath's opinion and why. *See, e.g.*, R. 17 ("I accord great weight to this assessment; it was based on a review of the claimant's presentations to numerous medical providers, while still taking into consideration her complaints of depression and anxiety."). Furthermore, she noted, correctly, that contrary evidence (i.e. Dr. Degroot's more severe assessment) was "not well-supported by the record" and that plaintiff's complaints about the limiting effects of her conditions, which formed a large portion of Dr. Degroot's assessment, were not entirely credible given plaintiff's "unwillingness to seek any significant ongoing mental health treatment, and essential normal mental status functioning in numerous physical examinations[.]" *Id.*; *see also supra* note 3.

In essence, the ALJ found that Dr. Wanstrath's opinion was more convincing than Dr. Degroot's because it formed a more holistic picture of the state of plaintiff's mental health

---

[4] Both parties agree that one reason the ALJ gave for discrediting Dr. Degroot's opinion—i.e. that "claimant had a strong pecuniary interest in appearing mentally ill" was not proper. The Court agrees, since if that is a valid reason to discredit a claimant's complaints or an assessment partially based on them, then no claimant is credible and none should be awarded benefits. Nevertheless, I find that substantial evidence still supports the ALJ's treatment of Dr. Degroot's assessment despite that error. *See Hamilton*, 961 F.2d at 1500.

during her alleged period of disability while still taking into account her subjective complaints of her conditions. For all the reasons mentioned above, substantial evidence supports this finding.[5]

### D. The ALJ's Decision can be Read to Have Incorporated Dr. Wanstrath's Mental Work-Related Limitations.

Plaintiff next argument is that the ALJ improperly "cherry-picked" from Dr. Wanstrath's opinion, assigning "great weight" to the parts she liked but ignoring the mental work-related limitations Dr. Wanstrath assigned to Ms. Mata (i.e. that plaintiff could not work closely with supervisors, co-workers, or the general public, or relate to coworkers if those interactions were frequent or prolonged, see R.87). Again, I'm not convinced.

As defendant persuasively points out, although the ALJ did not explicitly reference these limitations, her decision can reasonably be read to have incorporated them. For instance, the ALJ's RFC includes the limitations that Ms. Mata engage in "no more than casual, non-team interaction[s] with co-workers" and that she have "no work tasks requiring directing others." R. 14. I find these limitations encapsulate Dr. Wanstrath's opinion that plaintiff not work closely with others. *See* R. 87.

Furthermore, the ALJ's finding that plaintiff is limited to "simple, routine, repetitive work tasks" with only "casual, non-team interaction with co-workers[,]" see R. 14, coincides

---

[5] Plaintiff contends that Dr. Wanstrath's opinion was based on a review of an incomplete record. However, as defendant rightly points out, the "missing" portions of the record (produced *after* Dr. Wanstrath gave his opinion) do not seriously undermine his findings if at all. This additional evidence includes a hospital visit in which plaintiff complained of generalized "anxiety" that was quickly treated with anti-anxiety medication, and Nurse Evert's assessment of plaintiff's mental work-related limitations, which, like Dr. Degroot's, are largely based on plaintiff's (not credible) complaints. *See* R. 376-80, 416-19. Furthermore, plaintiff is simply wrong in contending that the ALJ merely relied on the weaknesses of Dr. Degroot's opinion in giving great weight to Dr. Wanstrath's. The ALJ noted the convincing underlying evidence (or more accurately, the lack of evidence) that Dr. Wanstrath relied on in forming his opinion regarding the severity of plaintiff's mental health condition. Thus, the ALJ validly assigned Dr. Wanstrath's opinion great weight because she found that his opinion better comported with the record than did Dr. Degroot's. *See* R. 17; *cf. Thompson*, 987 F.2d at 1489.

with Dr. Wanstrath's general opinion that plaintiff's contact with her co-workers be infrequent and not prolonged, R. 87.  Thus, when the ALJ gave "great weight" to Dr. Wanstrath's opinion, she accorded that weight to all of it.  *See also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record") (alteration and internal quotation marks omitted).

### E. The ALJ Properly Rejected Nurse Evert's Opinions on Plaintiff's Physical Limitations.

Finally, I disagree with plaintiff that the ALJ improperly rejected Nurse Evert's opinions.  As a nurse practitioner, Nurse Evert is not an "acceptable medical source" who can give a "medical opinion."  Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2.  Her opinion still must be considered, and while an ALJ does not need to follow the traditional six factors for assessing medical opinions by acceptable medical sources as laid out in SSR 06-03p, an ALJ must, at the minimum, consider the following:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s);
- Any other factors that tend to support or refute the opinion.

*Id.* at *4–5.  I find that the ALJ did so here.

For instance, the ALJ noted Nurse Evert's three-month relationship with plaintiff, which plaintiff does not refute.  R. 16.  She correctly noted that despite Nurse Evert's comment on

16

plaintiff's "constant" urinary incontinence, no other evidence in the record (aside from plaintiff's own testimony) reveals that she had such a condition. *Id.* Furthermore, the ALJ noted, correctly, that Nurse Evert's opinion was "conclusory" since it repeatedly left blank the sections on the form asking what medical findings support each assessment she made. *See* R. 401–04. Finally, despite plaintiff's contention to the contrary, the ALJ did not incorrectly state that as a nurse, Nurse Evert is "not an acceptable medical source *for purposes of establishing a medically determinable impairment*[.]" *See* R. 16; SSR 06-03p, 2006 WL 2329939, at *2. Given the ALJ's valid treatment of Nurse Evert's opinion, I find no error with the ALJ's decision to give Nurse Evert's opinion "no weight."

## ORDER

For the reasons above, the Court AFFIRMS the Commissioner's decision denying claimant Michelle Mata's application for SSI benefits.

DATED this 30th day of January, 2017.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge